Again, I call Case No. 20-1507, Moreno v. Department of the Interior. Ms. Rosenthal. Thank you, Your Honors, and may it please the Court. My name is Danielle Rosenthal for Petitioner Ms. Letitia Moreno. Despite an 18-year unblemished career with the government, Ms. Moreno was charged and removed for AWOL, where her only conduct was being absent due to her serious and undisputed medical condition. And as she's testified, having that disciplinary charge in her employment record has had collateral damage to her. It's extended beyond the loss of her job and has made it difficult for her to get a new job. The Board committed several errors in sustaining the AWOL charge and removal, any of which warrant a reversal or vacature. Given my time, I'd like to focus on two of these errors, the legal error in removing for AWOL where the absences were medically necessary, and even if the AWOL charge were proper, the Board's abuse of discretion in sustaining the penalty, where it ignored mitigating evidence of her medical condition and failed to conduct an independent balance of the Douglas factors, with a focus on only the sustained charge. Counselor, this is Judge Arena. It seems to me that at some point in the case that it's clear, or at least questionable, but it's almost clear, I believe, that Ms. Moreno's not going to come back to work. Is that accurate? Ms. Moreno did come back to work. She came back to work on June 11th. So we would contend that that was not clear, and, in fact, the medical notes beginning in February, through the time that she came back to work, said that she was temporarily incapacitated, and that she would return to work as soon as she could. This is Judge Stoll. Wasn't there at least one note that said it's unclear when she would be able to come back? And I can't remember the specific date of that, but I want to say maybe it was April. There was at least one medical note that said that. Do you recall that or no? Yes. I believe you're referring to the January note where it was less than clear, but the notes subsequent to the January note make clear that she was on a temporary leave of absence and that she would be able to return. She did return to work for three days, but then she was absent again after that for an extended time. Correct? She returned to work, I believe you're referring to October of 2017, and then she was out from November through the following June. When she came back in June, that was part-time, if I recall correctly. Is that right? That is correct. And, you know, whether these absences were extended or not, this court made clear in Schultz that where a person cannot work solely for health reasons, the agency cannot discipline that person by removing for AWOL. I note that in Schultz the agency knew that Ms. Schultz could not work for health reasons and in response to leave requests gave her the option to resign, return to work, or face AWOL. She resigned, and this court held that the resignation was coerced because the agency threatened her with a disciplinary action it knew it could not sustain that was removal for AWOL where she couldn't work due to her health. Here, although the agency didn't coerce Ms. Moreno to resign, it did just what Schultz says is improper. That is, it gave her the impossible choice of returning to work when it knew she couldn't work for health reasons and disciplined her when she didn't return to work, and that discipline was improper. I note that this court's indulge endorsed the Schultz principle that an employee cannot be disciplined for medically necessary absences in subsequent cases, and numerous board decisions have squarely applied Schultz to overturn removal for AWOL. As Schultz made clear, an agency of course still has discretion to remove an employee who can't work due to health reasons by initiating a nondisciplinary action, but an agency should not discipline and penalize the employee who cannot work for health reasons, and that is what removal for AWOL does, and as Ms. Moreno has testified, that has had collateral damage to her. But what's the collateral damage? As she's testified in APP Act 481, she's had a difficult time getting subsequent employment because of that disciplinary AWOL charge in her permanent employment record. This is Judge Stoll. When we're looking at sustaining or whether or not there's substantial evidence to sustain the six weeks of AWOL, we are able to consider the history that preceded that, right, including all of the different doctor's notes, and that can be considered, right? Well, assuming that the AWOL charge I guess is legally proper, perhaps, although I don't see anywhere in the Douglas factors that would take into account previous absences. I understand. My question was about sustaining the charge, not about the Douglas factors. I understand your Douglas factor argument to be that the board didn't grapple with the question of whether the maximum penalty of removal was proper after six weeks of AWOL when only one of the charges was sustained, right? That there was some independent Douglas factor analysis that had to be done because only one of the charges was sustained. Isn't that your argument? That's correct. Yes. But turning back to if we're just talking about the AWOL charge, Schultz has made clear that employees shouldn't be disciplined by being removed for AWOL where the absences are due solely to a nondisputed medical condition. So whether the absences are 30 days or 60 days or longer, the point of Schultz is that an employee shouldn't get that disciplinary AWOL and removal for AWOL. But this court has also held that an agency is not required to indefinitely retain an employee who cannot work due to poor health. That's correct. And as Schultz makes clear, in that situation, the proper procedure is to initiate a nondisciplinary action. Yes, but Schultz is a coercion case. This is not. Right. Although Schultz concludes that there is coercion, the basis for that conclusion is that the agency threatened an action it knew it could not sustain, and that action was removal for AWOL where Ms. Schultz had an undisputed medical condition. And that principle that's mentioned three times in Schultz applies here. The idea is that employees should not be disciplined if she cannot work solely due to her health condition. Here's a problem I have. There's no dispute that Ms. Moreno was AWOL for about 240 hours from April 30th to June 11th. And we have contradictory notes, some that say that she can come back to work, others say that she cannot. And there's even a document that indicates that her problem is indefinite. And the agency has made adjustments for her, let her work remotely, set up facilities for her to work, and none of that seemed to help her and her medical condition. And it gets me back to the question about the agency having to indefinitely retain an employee who's not coming to work. At some point, there has to be, it seems to me, a line that both parties cross. That's correct, and as Schultz makes clear, as well as other cases, that an agency, of course, still has discretion to remove an employee in that circumstance. But the proper procedure is to initiate a nondisciplinary action. So the error here was in charging and removing solely for AWOL. Are you saying a nondisciplinary action would have resulted in a different result? Potentially, yes. And it certainly wouldn't have resulted in a result that has an employee's permanent employment record a disciplinary action. Is that the real problem here, that she's carrying around this AWOL on her record? Yes, that is the problem, and that's what Schultz says cannot happen. Distinguishing Schultz. I mean, one argument that's made is that Schultz can be distinguished because here, the agency tried to work with Ms. Moreno for quite some time before giving her, you know, approved medical leave before having to resolve to demanding that she return. Well, the problem with that, though, and the alternative sort of accommodations it provided is that assumes that her absences weren't medically necessitated. Because if they were, you know, alternative accommodations really doesn't make sense. And here, the agency did not dispute that. And in fact, the board at APPX-9 says, I find no dispute that the appellant was incapacitated for duty for the dates that the agency charged the appellant with AWOL. Presumably, the outcome in this case wouldn't be different if Ms. Moreno had a more, a physical ailment like cancer, for example, where they kept on trying to treat it, but they weren't able to and they kept on saying, we think we're going to be able to treat this and she'll be able to come back to work, but it turns out that she can't. They just haven't been able to cure the cancer yet or put her in remission enough that she was able to return to work. You think that this case should have no different of an outcome here just because it's a mental illness as compared to cancer, right? That is correct, Your Honor. Right. And that's where Joyner is improper that, you know, whether the medical condition, the end of it is foreseeable or not, shouldn't be the deciding factor of whether the employee is disciplined where, you know, the absences are solely due to the medical condition. Is she ready to come back to work? Is that what her doctor is saying? She was at the time. Apparently, I'm not sure right now. I know after that, after she was removed, she tried to get subsequent employment, and she had a hard time doing that with the AWOL charge in her record. So if you're honored to have no further questions, I'd like to move on to the penalty determination. All right. Take another moment or two on the penalty. Great. Thank you. So even if the AWOL charge were found to be proper, the board used its discretion in affirming the penalty. And there are errors in the board's decision. First, the board did not consider give any weight to her medical condition as mitigating. The board's decision doesn't even mention much less, you know, give any weight to her medical condition as mitigating. And under this court's precedent in Bell, where there is evidence relevant as here to mitigating circumstances, that must be considered and given weight. Also, where all the charges were not sustained, the board must independently balance the Douglas factors under the lens of only the sustained charge. Here the board didn't do that. Instead, rather than discounting the absences related to the unsustained excessive absences charge, the board's decision found those absences aggravating. Therefore, the board used the unsustained charge against Ms. Marino, which is the opposite of what it's supposed to do. And finally, the board also found the potential for rehabilitation aggravating without considering her evidence of her return to work. And also, as stated in Bell, evidence of return to work must be considered as rehabilitation. So for these errors, we believe warrant reversal or vacature. Okay. Thank you. Let's hear from the other side. Ms. Kristeniak? Thank you, Your Honor. The agency here worked with Ms. Marino as much as it could. However, as of June 2018, Ms. Marino had performed her job only part-time for two weeks the previous October. As an initial matter, Ms. Marino is essentially arguing for a bright-line rule  from ever denying a leave-without-pay request. The Schultz case, as Judge Reina indicated in one of his questions, was based on a question of whether or not the board had jurisdiction over an appeal, whether or not there was a coerced retirement. I think importantly in Schultz, Ms. Schultz had available leave that presumably would have covered the amount of time that she was asking to take off. So there in Schultz, we had a medical documentation indicating that she needed to take leave. She had available leave that would cover it, and the agency denied her request. Counsel, this is Judge Stoll. Is there a mechanism available that is non-disciplinary for situations like this where somebody has a medical ailment that's undisputed? To my knowledge, within the agency, not necessarily, Your Honor, because the question really does come down to if the denial of leave-without-pay is reasonable. And I would refer the court specifically to your decision in Kampana in 1989, which we did cite, where this court stated, the authorization of leave-without-pay where medical excuses are involved is generally a matter of administrative discretion, notwithstanding the agency's instructions here. However, an agency's denial of leave-without-pay must be reasonable under this. So you're suggesting that there's only like a binary option. You either give the person leave-without-pay, or you charge them with AWOL, and then you can discipline them. There isn't some in-between where you say, right now, you're not able to work, and so we can't keep you on the rolls, and so you're going to get – we're going to remove you, but it's for a non – it's not a disciplinary action. There's nothing like that. To my understanding, there is not, Your Honor. And it really does come down to if Ms. Moreno no longer had any accrued leave, which is obviously not contested, the agency advanced her six weeks of paid sick leave, the maximum it was able to do under regulation. The agency gave her 11 weeks of leave-without-pay. At that point in time, if she's not going to return to work and the agency is not going to extend further leave-without-pay, there is really no option but to code her as absent without leave, as AWOL. My understanding is there's not another middle ground within the agency's capacity, and I've not heard of that from any other agency. And I do – again, I do want to emphasize the Kampana case, because there it was a very similar situation where an employee, for a variety of medical reasons that were never questioned by the agency, received 401 hours of leave-without-pay. And then he was absent again for similar medical reasons, submitted medical documentation, which was never questioned by the agency or the board as far as veracity or his incapacitation, and argued to this court that – and this is from page 291 in that opinion – the court wrote, Kampana, relying on the court's decision in Wade from 87, contends that because he was incapacitated for the periods in question, his leave must be classified as leave-without-pay. That contention is without merit. So this court has already held that it is not a requirement that if an agent – that if an employee presents a medical reason for their absence, the agency is absolutely required to approve any leave-without-pay request, no matter the duration of it. Counsel, can I ask you about the Douglas factors for a minute? Certainly. So our cases suggest – like, for example, I'm thinking of LeChance and Tartaglia. They state that where the board does not sustain the full PEMP charges, then the board must independently grapple with the Douglas factors and assess whether the maximum penalty of removal was proper for the charge that's sustained. And I don't – I'm having a hard time seeing where the board did that. When I look at the board's analysis, it seems that they're just referring to the agency's analysis. And maybe there's one conclusory sentence. There's not even a single suggestion of mitigation based on factor 11, which would be the medical reasons. And I just – so I would like you to address that and point me to where in the board's opinion I should see that it addressed the Douglas factors in an independent analysis from the agency. Certainly, Your Honor. So we would refer the court to appendix at page 10. Well, as an initial matter, a plaintiff's or a petitioner's reply brief asserts that any discussion of this matter that is outside of the penalty discussion at the very end of the opinion should not be considered as not part of the board's analysis. As this court held in Robinson in 2019, that is certainly not the case. The entirety of the opinion may be read in whole, and the entirety is the board's analysis. So we would specifically refer the court to the board's analysis at appendix page 10, where it considered the extent of the incapacitation and the impact on the reasonableness of the agency's action. Can you slow down for a minute? You're going a little fast. I want to make sure I can follow what you're saying. Absolutely, Your Honor, and I do apologize for that. So at page 10 of the appendix, the administrative judge noted, the appellant has contended that it is not for the agency to determine how many days are necessary for my recovery. I find those contentions misapprehend the agency's point that when it began to deny appellant leave and place her in an AWOL status, it had substantial reason to doubt her medical provider's lukewarm assurances that she could return to work in the capacity that the agency needed her. Ms. Douglas-Master, do you think he's analyzing here? That was with regard to the mitigation, the idea that the presence of the medical condition was an intricate part of the analysis, and specifically in the Ball case. So in other words, the mitigation, the discussion of the mitigation factor of her medical ailment is, well, it looks like she's never going to be able to return. Beyond that, Your Honor, I would also refer the court to page 16 of the decision, where AJ stated, if anything, the facts of this case lead me to believe that the agency probably afforded the appellant greater latitude with her request because of the medical nature of her request. And also there is another finding where the administrative judge notes that the agency likely could have marked her as AWOL as of April 9th. However, they were being conservative in the approach that they were taking to her and marked her as AWOL instead on April 30th. And so we do think that those analyses are an analysis of the extent of the medical condition and the impact on the agency's actions and what they chose. So just to make sure I understand, the last point you made was that in considering whether her medical condition was mitigating or not, they considered that the agency could have found her tertiary with AWOL as early as April 9th. That relates to her medical ailment? We think that this statement's indicating that the agency, finding that the agency treated Ms. Moreno with more forbearance and more leniency because of the medical nature of her ailments and of her reasons for not being able to perform her job, indicate that there was an analysis. There was a mitigation of that factor. I'm asking you where the board considered, you know, her medical condition, you know, under Factor 11 of Douglas. And I guess I'm having a hard time on that last one, understanding your point, which is that, oh, well, they could have charged her with more. It doesn't really seem to relate to, you know, her medical ailment as a reason for why, you know, she maybe shouldn't receive a removal. Anyway, maybe you can explain that to me better. Certainly. And I think it might be useful to explain this vis-a-vis some of the cases cited by Petitioner in her reply. Specifically, I believe Petitioner said, Belle, I think he was referring to the Ball decision from this court in 2018, where this court may remember there was an employee who, in the midst of a depressive episode, completed his time cards for about 400 hours but did not actually work during that period. This court reversed, finding that there was not enough discussion of the mental state of Mr. Ball during that period of judge's decision because there was no discussion of it. There was the only factor that was discussed in the decision was the seriousness of it. There was no mention of the medical records that had been submitted. There was no mention of the testimony from Mr. Ball that he was incapacitated at that time. Similarly with the Malloy case, where this court, again, remanded, finding that there was not enough discussion of a mental state. In that case, Ms. Malloy testified that she had been undergoing a depressive episode during the period in time. The administrative judge essentially found that her testimony was not credible, notwithstanding the fact that there were contemporaneous medical documents that were also placed on the record that supported the testimony that she gave. This court found that that was an abuse of discretion to have ignored that medical testimony and to have not examined the impact that her mental state might have had on the activity that she undertook. That compared to the administrative judge's decision here, where it cannot be said that there was no discussion of her illness. I agree. I understand your point on that. I'm having a little bit of a hard time, because the only place where I see him talk about this is the judge. The only place where the judge talks about whether to sustain the removal penalty, notwithstanding the fact that he didn't sustain both charges that the agency had found, it's one sentence. He says, even though I did not sustain charge one, I still find these absences pertinent to charge one are aggravating, and that the absences pertinent to charge two suffice to render the agency's removal penalty within the bounds of reasonableness. But he didn't actually discuss the Douglas factors in that context. It's just one sentence. I understand, Your Honor. And we would argue that that sentence is the summary of the entirety of the administrative judge's 23-page decision. And I would also, I think it's incumbent on us then to comb through all of the decisions of the board and these kinds of circumstances and kind of, you know, ferret out where we think that they might be talking about Douglas factors in different parts of the opinion. Is that what you're suggesting?     it's incumbent on us then to comb through all of the decisions of the board and these kinds of circumstances and kind of,   And I would also argue that the observation is read in a whole and in harmony. And so it is not just a limitation to the discussion of the penalty and Douglas factors in the few paragraphs at the end of the opinion, but rather the entirety. So yes, we do think findings of the administrative judge makes with regard to how the agency provided for more leniency, not withstanding the fact that it, because it was a medical condition along those lines, we do think that those are relevant to the mitigation. And we do think that under, under Robinson, those should be considered as the analysis of the administrative judge because they were his analysis. Well, what if, what if the, what if the administrative law judges would say, I find yes. Now look for it. In my opinion, I mean, I, I, I'm understanding what judge soul is asking, asking you. And I'm not satisfied with your answer as well, that it's up to us to find. Within the opinion support for the, for the AJ. Understood your honor understood. And I'm sure this is not the first time the court has wished that the board perhaps gave a more fulsome explanation for its decision. However, again, we do think under Robinson, the reading, the entire, I think we do require, we do require a justification. We do require an analysis. For the, for the rat. Yes. And, and, and here there's not much, if any analysis, but you're saying that what we should do is we should have set the opinion as a whole to answer. Whatever questions may come up, including this one. And I just don't think that that's. You have legal authority for that. I would refer the court to the Robinson decision on page one, zero one eight. And I'm quoting here where it says the length and detail of the board's discussion and Mr. Robinson's misconduct throughout the remainder of the opinion is relevant to numerous Douglas factors, including the seriousness of the offense. We have found that this type of analysis may not be repeated in the penalty discussion, but rather the opinion should be read as a whole. When I look at the analysis here, that one sentence, I can't figure out what all the analysis would have been and what the judges analysis would have been for all the different Douglas factors because he hasn't provide one. And I can't figure it out from the opinion. I mean, I'm supposed to be reporting, reviewing the board's decision to see whether it's arbitrary, capricious and abuse of discretion, whether it's supported by substantial evidence, but I don't see what I'm supposed to be reviewing here with respect to these Douglas factors when they're not specifically addressed. Understood your honor understood. And I, I, I believe we may need to stand on our briefs on this. I, I fully understand the court's the court's concern with this. And I, I apologize for not having a different answer other than we do think that the entirety of the decision speaks to the analysis here and also the underlying reasonableness of the penalty. And I think as support for that, I would point the court to appendix page 42, which is the removal decision from the agency where the agency does walk through the fact that the, the table of penalties and the fact that even though the, the AWOL charge, which of course can be for an hour of tardiness, returning from lunch, a first, a first penalty there does not necessarily recommend removal later in the table. It does say that excessive unauthorized absences more than five days would necessitate would justify removal. And there you have the agency specific analysis talking about the fact that it believes removal is sufficient under under excessive unauthorized absences, which is of course what absent without leave is. And so we do think that that the, notwithstanding the limited nature of the analysis done by the administrative judge, the, the, the analysis given by the agency and the record is specifically noting that it's believed removal is sufficient for the AWOL charge. We think provides enough support for, for the decision. And I see that my time has completed. Unless there's further questions from the panel, we respectfully requested the court affirm the decision of the administrative judge. Thank you. Any more questions from the panel? No, thank you. Okay. In that case, Ms. Rosenfeld, you have your rebuttal time. Are you there? Are you unmuted? Thank you, Your Honor. Sorry about that. Turning first to the the penalty section of the board's decision. We agree as Your Honor pointed out that the Douglas factors are not addressed here at all. And that's really error. And moreover to the, the, the, the board does adopt the agency's decision and said the deciding official considered as mitigating the lack of any disciplinary record and the quality of our work and noticeably is expressly absent as to the medical condition. So it appears that the medical condition was not given at all consideration as to whether it was mitigating in contrast to what the board does say was mitigating. We also contend that the fact that the medical condition was mentioned in other parts of the decision does not demonstrate that the, the board considered the medical condition as mitigating in the assessment of the penalty determination. And you know, as Bell makes clear, just because the medical condition is mentioned, that does not, that's not sufficient. That where the medical condition is an evidence that it must be given weight as mitigating. And the additional problem of where, where the medical condition is mentioned in other parts of the decision, the board seems to fault Ms. Marino for the results of it rather than consider it as mitigating. So what, what happens if we will to, to remand on this case? What instruction will we remand on? What instructions will we provide on remand? Well, first, well, we would believe that the AWOL charge was improper. So we would, we would instruct, we would ask that it be instructed that, because here the absences were solely due to her medical condition, that she cannot be charged. How does that, how does that relate to whether the analysis or discussion of the medical condition is proper? So the Douglas factors takes into account, assumes that the AWOL charge was proper. So if we assume the AWOL charge is proper, then, then we would ask that the board consider her medical condition as mitigating and do the proper analysis here that's required under the law. We would ask that here when, when less than all charges are sustained the, the unsustained charge should be discounted, not found as aggravating as was done here. And I just know that this, this whole Douglas factors is exactly, and the agency's decision demonstrates the problem with trying to remove someone based on AWOL where, you know, the sole conduct is not being able to work because of a medical condition. The agency's analysis of the Douglas factors makes no sense. And again, penalizes her for the results of their medical condition rather than uses the medical condition as mitigating. So unless your owners have any further questions, we ask that in light of any one of these areas, the court reversed or vacate the board's decision. Any more questions for Ms. Rosenthal? No, thank you. Okay. Hearing none, the case is taken under submission with thanks to council.